ABE R. BROTSPIES (AND NINE OTHERS), PLAINTIFFS-APPELLANTS, v. DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 13, 1962—Decided February 21, 1962.

Before Judges Goldmann, Freund and Foley.

*Mr. Sidney Krieger* argued the cause for appellants.

*Mr. William L. Boyan,* Deputy Attorney General, argued the cause for respondent (*Mr. David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

Goldmann, S. J. A. D.   In their initial attack upon the written examination given by the Department of Civil Service for the position of Supervisor of Case Work, Essex County, plaintiffs challenged 10 of the 110 questions marked and the correctness of the Department's answers.   The parties consented that a single judge, sitting on behalf of the Appellate Division, conduct a hearing, consider the arguments made and determine the matter.   After reviewing the Department's questions and answers, and the unsuccessful candidates' objections and the manner in which the examination was prepared and conducted, this court concluded that there was no reason for judicial intervention, saying:

"* * * Plaintiffs failed to establish that the questions were not fair and clearly put, or that they did not explore an area of knowledge and information appropriate to the Supervisor of Case Work position.  The questions emanate from an entirely responsible and expert source, the Division of State Merit Systems of the federal Department of Health, Education and Welfare, and are the result of careful preparation and pretesting.  The answers considered correct by that Division, as well as by respondent Department which has adopted them, have not been shown to be unreasonable or implausible. We are persuaded that respondent exercised a reasonable administrative judgment in finding its answers more appropriate than those for which plaintiffs contend." (*Brotspies v. Dept. of Civil Service,* 66 *N. J. Super.* 492, at *pages* 498–499.)

We directed that

"* * * The appeal may proceed to a determination of any other questions raised by appellants in challenging the Department's decision that the examination for Supervisor of Case Work was in all respects in accordance with Civil Service rules and regulations and found to be in good order, and declaring plaintiffs to have failed to obtain a passing grade in the written test so as not to be eligible to take the oral examination." (at *page* 499)

There were ten appellants originally, now reduced to nine because, according to the representation made by the Attorney General, Sally Wick has indicated she does not desire to pursue the matter. In this second phase of the appeal, appellants maintain that (1) due to manifest errors in its preparation, the examination did not fairly test the applicants and therefore should be declared void; and (2) the refusal of the Civil Service Commission to explain the method it used in preparing the examination and grading the questions is so arbitrary as to justify cancelling the examination. By this latter contention appellants are in effect asking us to reconsider what was essentially the basis of their attack upon the ten questions earlier challenged in this appeal.

Before proceeding to a discussion of appellants' first point, we note that by telegram as well as letter, both dated September 8, 1959, some 21 unsuccessful candidates notified the Civil Service Chief Examiner and Secretary that they appealed the Case Work Supervisor examination on the basis of "mechanical errors," the fact the examination was not validated, and because the subject matter did not pertain to the duties and title of the position. The Chief Examiner and Secretary thereupon reviewed the examination in accordance with *Civil Service Rule* 38, found it to be in order, and notified the objectors that candidates who had failed to achieve a passing grade in the written test would not be permitted to take the oral test. The unsuccessful candidates then wrote the President of the Civil Service Commission asking for a hearing because the exami-

nation had not properly been validated, a number of questions were eliminated subsequent to the examination, there were mechanical errors which tended to confuse and distort the meaning of the questions, a number of questions had official answers which were subject to controversy because they did not fairly test the applicants' fitness, certain of the answers were factually incorrect and, finally, the examination did not meet the standards set forth in $R. S.$ 11:9–3. In reply to this renewed challenge of the examination, the candidates were again notified that no further review was indicated and the Department of Civil Service considered the matter closed. Ten candidates then launched this appeal.

Subsequently, at a conference conducted by the deputy attorney general on behalf of the Department, at which Department Director of Examinations Boyd, three of the appellants and their attorney were present, the following were agreed upon:

1. Although the examination booklet announced there were 125 questions, it contained only 123, serially numbered 1 to 123, with two exceptions: there was no question No. 96, and there were two questions No. 116.

2. All candidates completed the entire examination except for an occasional omission.

3. Five questions were duplicated in the list of 123, namely 86 and 99, 89 and 105, 92 and 97, 94 and 101, 95 and 98. The answers to the questions so duplicated, $i. e.$, questions Nos. 97, 98, 99, 101 and 105, were not taken into account in grading the papers.

4. The answers to questions Nos. 117 to 123, inclusive, were not counted in the grading because it had been determined that they were not applicable to the position of Supervisor of Case Work, Essex County.

5. It was further agreed that appellants' attorney, and as many of the appellants as cared to attend, were to be afforded the opportunity of examining the question booklets, answer sheets, and the answer key used by the Department. The attorney was to inform the Department in writing of the questions which appellants considered were marked incorrectly, and the answers they considered correct.

Taking advantage of the opportunity so afforded them, three of the appellants appeared at the Department's office

on February 5, 1960 and spent almost three hours examining the questions, answer books, and key answers. On March 2, 1960 their attorney notified the Department that appellant Brotspies had advised that 42 of the answers (the numbers of the questions were given) were being contested. The Department, through the deputy attorney general, replied that the statement, as had been agreed, would have to be made on behalf of all appellants, who would have to indicate what answers they considered to be the right ones.

On May 19, 1960 this court directed that appellants be given the opportunity to inspect the examination questions, at which time they were to state the numbers of those questions they considered to have been improperly marked, as well as the answers they believed correct. The result was that appellants narrowed their challenge to the ten questions dealt with in our earlier opinion, 66 *N. J. Super.* 492.

We find no merit in appellants' present contention that the examination, because of manifest errors in its preparation, was not a fair test and should therefore be declared void. Under this head, appellants, as indicated, complain that:

1. There were only 123 questions, although the examination booklet indicated there would be 125. It is not shown that anyone was misled. No candidate indicated any answer on the answer sheet for the phantom questions Nos. 124 and 125. No harm resulted; indeed, appellants do not even allege any harm to themselves because there were only 123 questions.

2. Eight questions, the duplicate of No. 116, and Nos. 117 through 123, were eliminated. Appellants do not question the Department's conclusion that these latter items were not relevant to the position for which the test was conducted. They were taken from an examination previously used to test applicants for the position of Supervisor of Case Work in another county, which had certain duties which the Essex County position did not have.

The eight questions, of course, appeared at the end of the question booklet. They could not have delayed the candidates in answering questions Nos. 1 through 116. The fact is that all those who took the examination completed all 123 answers except for an occasional omission—and appellants have so stipulated.

3. Five questions were duplicated. We find that seven of the nine present appellants answered the duplicated questions the same

way. By eliminating the second duplicated item in each case (Nos. 97, 98, 99, 101 and 105) and marking only the first (Nos. 86, 89, 92, 94 and 95) the Department gave the seven appellants whatever credits they were entitled to, without the over-emphasis that would have resulted if both duplicates had been counted, or the under-emphasis if neither had been.

As for the remaining two appellants, Lart and Smith, the exhibit in the record shows that each of them gave inconsistent answers to two of the duplicated questions. In the case of duplicated questions 92 and 97 Lart marked the first correctly and the second incorrectly. He did the reverse in the case of questions 95 and 98. As for Smith, in the case of duplicated questions 89 and 105 he marked the first incorrectly and the second correctly, and he did the reverse in the case of questions 92 and 97. Thus, whether the first of the answers in each set of duplicates, or the second of the answers be counted, Lart's and Smith's final grades would remain the same. Incidentally, their final average was 57 and 55 respectively, far below the passing grade of 77.

4. There were two questions No. 116. This resulted in no prejudice since all items following the first question No. 116 were eliminated as irrelevant. The second No. 116 and questions Nos. 117 through 123 constitute the eight items already mentioned.

5. Finally, the question booklet contained no item No. 96, although the answer sheet did. No harm resulted because no candidate, including appellants, indicated an answer for No. 96 on the answer sheet.

The elimination of the second of the questions No. 116, questions Nos. 117 through 123, and five of the set of duplicated questions, resulted in the test being reduced to 110 questions. No one has challenged these questions as not relevant to the position of Supervisor of Case Work, Essex County. Appellants had at least two opportunities to examine the question book, their own and other candidates' answers, and the Department's answer key. The first was on February 5, 1960, as a result of the departmental conference, and the second was by reason of our May 19, 1960 order. Originally, appellants challenged 42 answers; their attack finally focused on ten. We found these ten questions, and the Department's answers, correct.

A more careful review by the Department of the examination would have revealed the five duplicated questions, the two Nos. 116, the absence of question No. 96, and the in-

applicability of questions Nos. 117 through 123. However, we find these mechanical errors did not prejudice those who took the examination. We cannot agree with appellants' argument that these mistakes were enough to invalidate the examination as not competitive and as one that would not fairly test the qualifications of the candidates under *R. S.* 11:9–3 and 11:23–6, which require that examinations shall be of such character as fairly to test and determine the qualifications, fitness and ability of the person tested to perform the duties of the position to which he seeks appointment.

Appellants rely on *Blumenthal v. Morton,* 80 *N. Y. S. 2d* 301 *(Sup. Ct. Sp. Term* 1948), modified 273 *App. Div.* 497, 78 *N. Y. S. 2d* 302 *(App. Div.* 1948), affirmed 298 *N. Y.* 563, 81 *N. E. 2d* 102 *(Ct. App.* 1948). In that case the court reviewed an examination consisting of 90 multiple choice questions. Each question (as was the case here) had four possible answers, and candidates were instructed to "select the best of the four choices." Following the examination the Civil Service Commission published the tentative key answers and announced that protests could be filed with reference to its choices. These answers included two or more answers to four of the 90 questions. Following the filing of protests, the Commission published its final key answers, accepting two or more answers to five additional questions. The petitioners, contending there could be only one "best" answer, moved for an order cancelling the examination or directing the Commission to eliminate the nine questions for which there was no one best answer, or to review or re-rate the examination. The Commission argued that so long as its good faith was not questioned, the court should not disturb its exercise of discretion. The Special Term of the Supreme Court, 80 *N. Y. S. 2d* 301, directed the Commission to select the one best answer to each of the nine questions challenged. The Appellate Division, 273 *App. Div.* 497, 78 *N. Y. S. 2d* 302, modified the order to permit the Commission to eliminate

from the examination such questions as it deemed incapable of a best answer, making the necessary readjustment in the credit to be given on each of the remaining questions.

In the course of its opinion, the Appellate Division observed that the Commission should certainly be expected and required to select the single best answer wherever it was objectively possible to do so. This could be done for some of the nine questions. However, the court found that some of the questions were so inadequately or indefinitely framed that it was difficult to determine the best answer. Indeed, in some cases it was impossible to give any answer. It said:

"* * * The adjustments the Commission felt necessary to make in the key and the multiplication of answers it decided to accept were not so much an allowance for differences in judgment as an attempt to compensate for deficiencies in the questions. Assuming that something of the kind might be done within limits, and that an error, oversight or miscalculation in preparing an examination is not fatal or beyond repair, we are of the opinion that the miscarriages here, involving 10% of the questions, as dealt with by the Commission, would render the examination substantially non-competitive and defeat the purpose for which examinations are held." (78 *N. Y. S. 2d*, at *page* 305)

The *Blumenthal* case obviously has no application here. Despite their opportunity to review the questions and answers, appellants have not demonstrated that the questions, as in the New York case, are inadequately or indefinitely framed. They have in no way shown that the questions did not adequately test the relative capacity of those who took the examination to discharge the duties of the Supervisor of Case Work, Essex County, position. They have not, of course, claimed that Civil Service has, in the case of any question, indicated that more than one answer would be accepted as "best."

We turn to appellants' second contention that the refusal of Civil Service to explain its method of preparing the examination and grading the questions is so arbitrary as to justify cancellation of the examination. They readily

admit that "the judiciary is not disposed to engage in a. critical supervisory examination of the composition of the questions to be propounded to candidates in promotional tests conducted by the Department of Civil Service, or to exercise an appellate review of the scoring of the answers and other like administrative functions delegated most liberally to the authorized examiners of the Department by the Legislature." This is the language of *Artaserse v. Department of Civil Service,* 37 *N. J. Super.* 98, 105 (*App. Div.* 1955), cited in our earlier opinion. In *Artaserse* we further remarked that courts "will intervene to nullify such an examination where it is affirmatively shown to have been manifestly corrupt, arbitrary, capricious, or conspicuously unreasonable." See also *Flanagan v. Department of Civil Service,* 29 *N. J.* 1, 12 (1959), from which we quoted in our prior opinion.

Although appellants recognize the burden which is theirs to show affirmatively that the examination they challenge is manifestly arbitrary, capricious or conspicuously unreasonable, they have not discharged that burden. They claim that Civil Service has denied them the opportunity to develop a record which would show that the questions propounded were not proper in that they did not test the qualifications of the candidates, or they could not be graded objectively, and that some of the answers which it regards as the best are not, in fact, the best.

██ Appellants first criticize the refusal of Civil Service to furnish them with a copy of the questions, as well as of the answers it considers correct, and point to the practice of the New York Board of Examiners which publishes the examinations it gives, as well as the answers the Board considers correct. New Jersey has no requirement that Civil Service must publish the examination and its list of key answers. And see 66 *N. J. Super.,* at *pages* 495–496, 497, for the special reasons which inhibit publication in this case. Appellants, as twice noted, had full opportunity

to review the examination, the Department's official list of answers, and their own as well as other candidates' answers.

Appellants also contend that "for a Civil Service examination to be valid it must be competitive, and in order to be competitive there must be an objective standard or measure for grading the examination. Merely because the Civil Service Commission states it is giving a competitive examination does not make it so." Appellants have in no measure shown that the examination was not objective. No such claim was made at the time that the ten questions, finally claimed not to be marked properly, were challenged.

What appellants really argue here is that the questions put to them on the examination were never pretested. This was fully discussed in our decision appearing in 66 *N. J. Super.*, and the answer may be found on *pages* 496–497. The examination was prepared by persons of highest competence and was thoroughly pretested. As we observed in that opinion, the questions and answers have never been challenged in this or any other jurisdiction. (It is also to be noted that some or all of the questions were used for the position of Supervisor of Case Work in a county neighboring Essex.)

We have already remarked that what appellants attempt to do under this heading of their appeal is to have us reconsider what had already been determined in the first *Brotspies* decision.

What was said in the *Artaserse* and *Flanagan* cases, above, 37 *N. J. Super.*, at *page* 105, and 29 *N. J.*, at *page* 12, respectively, is entirely appropriate in the present setting. No valid ground for judicial interference has been presented.

The action of the Department of Civil Service is affirmed.